**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF KANSAS**

**Adam Freeman,**

        **Plaintiff,**

v.                                                    **Case No. 07-2102-JWL**

**BNSF Railway Company,**

        **Defendant.**

**<u>MEMORANDUM & ORDER</u>**

Plaintiff filed suit alleging that defendant BNSF Railway Company (hereinafter "BNSF") violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., when it withdrew a conditional offer of employment as a conductor trainee based on risks associated with plaintiff's insulin-dependent diabetes. This matter is presently before the court on defendant's motion for summary judgment (doc. 30). As explained below, the motion is granted.

**I.      Facts**

The following facts are undisputed or related in the light most favorable to plaintiff, the non-moving party. Plaintiff Adam Freeman has diabetes and he became insulin-dependent in 1994. In January 2004, plaintiff enrolled in an eight-week conductor training program operated by the National Academy of Railroad Sciences at Johnson County Community College. A conductor trainee is responsible for operating track switches that change the route of the engine or cars within yards or on the road and is also responsible for checking switch points to ensure that the switch is properly aligned. In addition, a conductor trainee is responsible for judging

and controlling the speed and clearance distance of cars and is required, sometimes for extended periods, to hold onto the exterior of a moving train. During the course of the program, plaintiff took a series of classes and received hands-on training in order to obtain the information and skills required to perform a conductor job at BNSF or another railroad. Plaintiff passed his written tests with a score of 95 percent and passed all physical tasks in the field as well.

In March 2004, after successfully completing the course, plaintiff applied for employment with BNSF and expressed an interest in various conductor trainee positions. At that time, plaintiff had no job restrictions related to his diabetes and was not aware of anything he could not do as a result of his diabetes. Soon, BNSF contacted plaintiff and offered him a position as a conductor trainee conditioned on satisfactory results from a post-offer, pre-employment medical examination and background check. In preparation for the medical examination, plaintiff filled out a medical questionnaire and he disclosed his diabetes. Thereafter, plaintiff submitted to a medical examination involving a variety of tests and procedures and he does not recall discussing his diabetes with any of the individuals conducting the examination. The results of plaintiff's medical examination were satisfactory.

BNSF requested that plaintiff's personal physician complete a "BNSF Diabetes Information Request Form" and Dr. Jeff Lawhead completed that form with respect to plaintiff's health condition. Certain information provided by Dr. Lawhead indicated that plaintiff's blood sugar levels were not, as conceded by plaintiff, "under tight control." With respect to plaintiff's medical history, Dr. Lawhead noted, without elaboration, that plaintiff had experienced "bilateral feet neuropathy." Dr. Lawhead also included, as requested by BNSF, results from plaintiff's

2

most recent eye examination and that report noted that plaintiff had been diagnosed with mild "diabetic retinopathy," a condition that is caused by high blood sugar levels and ultimately may result in decreased vision.

On April 19, 2004, Dr. Michael Jarrard, BNSF's chief medical officer, determined that plaintiff was not medically qualified for the conductor trainee and all other positions in BNSF's "train service" job category (including conductor, switchman, brakeman and engineer positions) "due to significant risks associated with complications of his diabetes, namely neuropathy and retinopathy." Plaintiff appealed the disqualification, but BNSF did not reconsider its decision with respect to plaintiff's employment. In a letter dated May 13, 2004, Dr. Jarrard wrote, in pertinent part, as follows:

> The job you applied for is the safety sensitive position of a conductor trainee in train service. You have a health condition of insulin dependent diabetes complicated by evidence of retinopathy and peripheral neuropathy in your feet. Additionally, the blood test, Hemoglobin A1C of 9.1 shows you have only fair control of your condition. With train service work, there is significant risk of injury associated with neuropathy, developing vision problems from retinopathy or incapacitation with inadequately controlled diabetes. Unfortunately, you are not qualified for a position as conductor trainee due to a significant risk of injury to yourself, your co-workers or the general public.

Plaintiff did not apply for any other positions at BNSF.

## II.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable

inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim.  *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  *Id.* (citing Fed. R. Civ. P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue  "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;"

4

rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.    Discussion

In the pretrial order, plaintiff alleges that BNSF regarded or perceived him as disabled under the Americans with Disabilities Act when BNSF withdrew its conditional offer of employment based on risks associated with plaintiff's insulin-dependent diabetes.  BNSF moves for summary judgment on plaintiff's claim on the grounds that plaintiff cannot establish that he is "disabled" as defined by the ADA and cannot establish that he is otherwise qualified to perform the conductor trainee position in light of his health condition.  *See MacKenzie v. City & County of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (citing *Butler v. City of Prairie Village*, 172 F .3d 736, 748 (10th Cir. 1999)).  As will be explained, the court concludes that plaintiff has not come forward with sufficient evidence showing that he is a disabled person within the meaning of the ADA.  Because summary judgment in favor of defendant is appropriate on that basis, the court declines to address defendant's alternative argument.

In showing that he is a "disabled person as defined by the ADA" for purposes of establishing the first element of his prima facie case, plaintiff must show that he has a physical or mental impairment that substantially limits one or more of his major life activities; that he has a record of such an impairment; or that he is regarded as having such an impairment. *See id.* at 1275.  Here, plaintiff proceeds only under the "regarded as" definition of disability.  A person is regarded as disabled when his or her employer (or, in this case, prospective employer)

5

mistakenly believes that the employee (or, in this case, applicant) has a physical impairment that substantially limits one or more major life activities, or when his or her employer mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *See Kelly v. Metallics West, Inc*., 410 F .3d 670, 675 n.5 (10th Cir. 2005) (citations and quotations omitted).

Plaintiff contends that BNSF regarded him as substantially limited in the major life activity of working. Pertinent EEOC regulations state that "[w]ith respect to the major life activity of working," the phrase "substantially limited" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *EEOC v. Heartway Corp*., 466 F.3d 1156, 1162 (10th Cir. 2006) (quoting 29 C.F.R. § 1630.2(j)(3)(i)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id*. (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Thus, to prevail on his "regarded as" claim, plaintiff is required to prove by a preponderance of the evidence that BNSF treated plaintiff's impairment as "significantly restricting" his "ability to perform either a class of jobs or a broad range of jobs" as compared to similarly trained persons. *Id*.

Clearly, the evidence in the record is sufficient to show that BNSF viewed plaintiff as substantially limited in his ability to perform the conductor trainee position and any other train service position, a BNSF job category that also includes conductor, switchman, brakeman and engineer. Indeed, BNSF does not dispute that it regarded plaintiff as substantially limited in his ability to perform these jobs. Nonetheless, BNSF argues that it is entitled to summary judgment

6

because, as a matter of law, BNSF's "train service" classification is not a class of jobs or a broad range of jobs in various classes. In support of its argument, BNSF directs the court to a Tenth Circuit case–albeit unpublished–squarely addressing the issue. In that case, *EEOC v. Burlington Northern & Santa Fe Railway Co.*, 2006 WL 3423483 (10th Cir. Nov. 29, 2006) (hereinafter "*BNSF*"), the district court granted summary judgment in favor of BNSF on a perceived disability claim filed by the EEOC on behalf of an unsuccessful applicant for the conductor trainee position.

By way of background, Dr. Jarrard in *BNSF* determined that the applicant's diminished left-hand grip strength and left-arm weakness disqualified the applicant from all train service positions, as those were the only positions that required, as an essential job function, an employee to hold on to the exterior of a moving train. Id. at *1. In rejecting the EEOC's perceived disability claim, the district court held that "train service" jobs did not constitute a "class of jobs" such that BNSF regarded the applicant as substantially limited in the major life activity of working. *Id*. at *2-3. In so concluding, the district court emphasized that BNSF determined only that the applicant could not perform a specific task (holding on to the exterior of a moving train) required by the train service positions such that he was not considered excluded from a "class of jobs." *Id*. at *3. The Tenth Circuit affirmed the district court's entry of summary judgment in favor of BNSF and, more specifically, the district court's conclusion that the plaintiff's exclusion from BNSF's train service jobs was insufficient to demonstrate exclusion from a class of jobs or a broad range of jobs in various classes.

Plaintiff does not mention the Tenth Circuit's *BNSF* decision in any respect and instead

7

relies primarily on this court's decision in *Fox v. BNSF Railway Co.*, 2006 WL 3791323 (D. Kan. Dec. 22, 2006).  In *Fox*, BNSF withdrew conditional offers of employment as a conductor trainee to two plaintiffs based on the results of post-offer, pre-employment medical examinations.  Specifically, Dr. Jarrard concluded, with respect to one plaintiff, that the plaintiff's previous lumbar spine fusion surgery presented a significant risk of future injury such that he was not medically qualified for the conductor trainee position.  With respect to the second plaintiff, Dr. Jarrard similarly concluded that the plaintiff was not medically qualified for the conductor trainee position in light of the plaintiff's rotator cuff tendinitis and the risk of future injury in connection with the physical requirements of the conductor trainee position.

Plaintiffs alleged in *Fox* that BNSF regarded them as disabled.  In its motion for summary judgment, BNSF argued that plaintiffs could not establish that BNSF regarded them as substantially limited in the major life activity of working and, as here, relied upon the Tenth Circuit's decision that "train service" jobs did not constitute a "class of jobs" and, as such, BNSF did not regard plaintiffs as substantially limited in their ability to work.  This court found the Tenth Circuit's *BNSF* decision distinguishable from the facts presented in *Fox*.  Specifically, the court emphasized that the evidence presented in *Fox* demonstrated that BNSF treated both plaintiffs as significantly restricted in their ability to perform not only train service jobs but numerous other jobs as well.  Thus, as noted by this court in *Fox*, the issue before the Tenth Circuit –whether "train service" jobs constitute a "class of jobs"–was not the issue before the court in *Fox*.

Plaintiff's reliance on *Fox*, then, is misplaced as there is no evidence in the record that

BNSF regarded plaintiff as significantly limited in his ability to perform any jobs other than train service jobs because of the safety concerns implicated by those jobs. That distinguishing fact renders this case on all fours factually with the Tenth Circuit's *BNSF* decision. Of course, because the Circuit's *BNSF* decision is unpublished, it does not compel the conclusion that "train service" jobs do not constitute a "class of jobs." Nonetheless, the *BNSF* decision certainly provides strong evidence of how the Circuit would resolve the issue, particularly as the employer and the specific job category are identical to those here. Moreover, a more recent published Tenth Circuit case also reflects that the Circuit would resolve the issue as it did in *BNSF*.

In *Jones v. United Parcel Service, Inc*., 502 F.3d 1176 (10th Cir. 2007), the plaintiff argued that UPS regarded him as disabled when UPS decided that plaintiff's lifting restrictions prevented plaintiff from returning to his job as a package car driver. *Id*. at 1191. The Circuit affirmed the district court's conclusion that the record contained insufficient evidence that UPS viewed the plaintiff as substantially limited in the major life activity of working. *Id*. In so concluding, the Circuit supported its reasoning with reference to a Seventh Circuit decision, *EEOC v. Schneider Nat'l, Inc*., 481 F.3d 507, 512 (7th Cir. 2007), in which the Seventh Circuit, as summarized by the Tenth Circuit, reasoned that the "employer did not regard plaintiff as disabled when all available truck-driving jobs at [the] company were subject to [a] safety standard that plaintiff could not meet." *See id.* at 1192-93. As explained by the Seventh Circuit in *Schneider*, there was no evidence that the employer regarded the plaintiff as significantly limited in any "life activity" other than driving a truck for the employer–"too esoteric a capability to be judged as 'major' life activity." 481 F.3d at 511. With respect to the major life

activity of working, the Seventh Circuit held that Schneider's decision to exclude the plaintiff from all available truck-driving jobs at the company (all of which had safety standards that the plaintiff could not meet) was insufficient to show that Schneider believed that the plaintiff had a condition that would disable him for working in a broad range of jobs or a class of jobs. *See id.*

Again, the evidence here reflects that BNSF believed that plaintiff could not perform any BNSF train service jobs. The train service category includes the positions of conductor trainee, conductor, switchman, brakeman and engineer. It is beyond dispute that each of these positions implicates the safety of others. The conductor trainee is responsible for operating track switches that change the route of the engine or cars within yards or on the road. The conductor trainee is also responsible for checking switch points to ensure that the switch is properly aligned and for judging and controlling the speed and clearance distance of cars. It is uncontroverted by plaintiff that the conductor, switchman and brakeman positions are simply additional steps in the progression to becoming an engineer such that job duties are akin to those performed by the conductor trainee and plaintiff does not dispute that the engineer is the individual who actually drives the train. These positions, then, share a common, specific qualification–the ability to perform the position without endangering the employee performing the position, his or her coworkers or members of the public–and it is this narrow and focused qualification that BNSF believed plaintiff could not accomplish in light of his health condition. Indeed, BNSF concedes that plaintiff could perform all other tasks associated with the conductor trainee position and there is no evidence that BNSF believed that plaintiff's health condition disqualified him from

any other job at BNSF.

The factual record here, then, lies in contrast to the record analyzed by the Tenth Circuit in *Justice v. Crown Cork & Seal Co.*, ___ F.3d ___, 2008 WL 2246967 (10th Cir. June 3, 2008). In *Justice*, the plaintiff worked as an electrician in one of defendant's plants. *Id.* at *1. After having a stroke, the plaintiff had a permanent impairment to his ability to balance and suffered from vertigo. *Id.* Because the plaintiff's job at the plant required him to navigate catwalks suspended above the floor of the plant and to work regularly around large machines, the defendant became concerned for the plaintiff's safety and disqualified him from "any assignment that requires working at heights or around moving equipment." *Id.* at *1, 4. Although the plaintiff's experience qualified him for any job in the plant, the defendant reassigned the plaintiff to the position of janitor. *Id.* at *4. Thereafter, the plaintiff filed suit alleging that the defendant violated the ADA by regarding him as substantially limited in the major life activity of working. *Id.* at 4-5.

The defendant moved for summary judgment, arguing that there was no evidence that the defendant regarded the plaintiff as disabled from performing a class of jobs. *Id.* at *6. The district court agreed and granted summary judgment. *Id.* On appeal, the Tenth Circuit reversed and, in doing so, emphasized that the evidence reflected that defendant believed that plaintiff's balance and vertigo problems could disqualify him from employment as an electrician not only in defendant's plant but also in other environments. *Id.* In fact, the evidence reflected that the defendant believed that the plaintiff's problems posed a safety hazard in any environment when he was working around "electricity," not just when he was working at heights or around moving

11

equipment. *Id*. at *6-7.  Thus, if the plaintiff were in fact incapable of working around electricity due to his impairments, then he would be significantly restricted in his ability to perform a class of jobs–all jobs in the electrical field. *Id*. at *7.  The Circuit concluded, then, that the plaintiff had presented evidence sufficient to support an inference that the defendant mistakenly believed him to be substantially limited in the major life activity of working. *Id*.

As explained above, the evidence in the factual record before the court here reflects only that BNSF believed that plaintiff's health condition disqualified him from BNSF train service jobs based solely on the specific safety concerns inherent in those positions.  Plaintiff did not apply for any other jobs at BNSF and there is no evidence that BNSF believed that plaintiff's diabetes would disqualify him from any other jobs at BNSF.  Moreover, there is no evidence that BNSF believed that plaintiff would be disqualified from any jobs outside the confines of BNSF. *Justice*, then, is distinguishable.

The court has found one other district court case that is particularly instructive as it relates to the facts presented here.   In *Traveler v. CSX Transportation, Inc*., 2007 WL 2500173 (N.D. Ind. Aug. 30, 2007), the employer removed the plaintiff from his conductor and engineer training duties based on the plaintiff's demonstrated mental instability and the resulting safety risk. *Id*. at *2-4.  Analyzing the plaintiff's argument that the employer had regarded the plaintiff as significantly restricted in his ability to work, the district court reasoned:

> All the evidence before the Court indicates that CSXT believed that the Plaintiff was restricted in his ability to perform two related jobs–locomotive conductor and engineer. The evidence also establishes that it was the safety-sensitive nature of these positions and the large scale harm that could occur while operating a 14,000 ton train carrying hazardous material that caused

> CSXT's concern. . . .   Although CSXT was unaware of the exact nature of the Plaintiff's condition, it only restricted him on the basis of a specific concern for safety that is implicated by those positions that are responsible for operating a train. Operation of a train is a particular, specialized job within the railroad industry, which is itself quite specialized. There is no evidence that CSXT perceived the Plaintiff as unable to perform an entire class of jobs or a broad range of jobs in various classes.

*Id.* at *9; *see also Siederbaum v. City of New York*, 309 F. Supp. 2d 618, 624025 (S.D.N.Y. 2004) (Transit Authority's decision to exclude plaintiff, as a result of his bipolar disorder, from four specialized jobs that involved safety-sensitive positions in which plaintiff would have responsibility for the safety of passengers did not evidence that Transit Authority regarded plaintiff as unable to perform a broad range of jobs or class of jobs).

For the foregoing reasons, then, plaintiff has not raised a triable issue on whether BNSF regarded him as substantially limited in the major life activity of working.[1]

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 30) is granted.

**IT IS SO ORDERED.**

---

[1]Plaintiff also asserts that BNSF regarded him as substantially limited in the major life activities of seeing, thinking, feeling and walking.  The evidence, however, simply does not support these theories. There is no evidence, for example, that BNSF believed that plaintiff was substantially limited in his ability to see or to walk.  Indeed, there is no evidence that BNSF believed that plaintiff's vision or ability to walk was limited in any respect at all. Rather, the evidence demonstrates only that BNSF believed that plaintiff, as a result of his diabetes, might in the future develop problems with his vision or walking sufficiently serious to render him a present safety risk in the conductor trainee position.

13

Dated this 6th day of June, 2008, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge